IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ADAMS OFFSHORE LIMITED, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-0465 |
| | § | |
| OSA INTERNATIONAL, LLC, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This is a maritime suit.  The plaintiff Adams Offshore, Ltd. ("Adams"), sued OSA

International, LLC ("OSA") and Con-Dive, LLC, alleging breach of contract, fraud, fraudulent

inducement, and conspiracy to commit fraud.  Adams sued Amado Omar Yanez Osuna ("Yanez"),

Oceanografia, S.A. de C.V., Mindy Kay a/k/a Mindy K. McGilvrey ("Kay"), Gustavo Adolfo

Azcarate Padilla ("Azcarate"), Woodlands Export LLC ("Woodlands"), and Transportes Navieros

Y Terrestres SA de CV ("TNT"), alleging conspiracy to commit fraud and seeking to hold these

defendants liable for the acts of OSA and Con-Dive under veil-piercing and alter-ego theories.

The following motions are pending:

- Adams moved for default judgment against Woodlands.  (Docket Entry No. 50).
  Woodlands responded by moving to dismiss for failure to state a claim. (Docket
  Entry No. 53).  Kay and Azcarate also moved to dismiss for failure to state the
  claims against them.  (Docket Entry Nos. 55, 56).  Woodlands subsequently moved
  to reopen discovery and set new discovery deadlines.  (Docket Entry No. 68).

- After the defendants failed to respond to Adams's discovery requests within the
  deadline:

  a.  Adams moved for summary judgment against OSA, Con-Dive, Yanez,
      Oceanografia, Kay, and Azcarate (collectively, the "summary-judgment
      defendants").  In the alternative, Adams moved for sanctions against Con-

Dive, OSA, Yanez, and Oceanografia in the form of a default judgment. Finally, Adams moved to strike the untimely discovery responses of Oceanografia, Yanez, and Con-Dive. (Docket Entry No. 51). The summary-judgment defendants responded in opposition. (Docket Entry No. 63).[1] Adams replied. (Docket Entry No. 70).

b.      Adams again moved to strike the discovery responses of Yanez and Con-Dive. (Docket Entry No. 54). The defendants responded, (Docket Entry No. 62), and Adams replied, (Docket Entry No. 69).

c.      The summary-judgment defendants moved to substitute a signed declaration for an unsigned declaration. (Docket Entry No. 71). Adams responded in opposition. (Docket Entry No. 72).

d.      The summary-judgment defendants moved under Federal Rule of Civil Procedure 36(b) to withdraw their deemed admissions. (Docket Entry No. 81).[2] Because this motion was filed a few days ago, Adams has not yet had an opportunity to respond.

Based on the motions, responses, and replies; and the applicable law, this court rules as follows:

- Adams's motion for default judgment, (Docket Entry No. 50), is denied as moot.

- Woodlands's motion to dismiss, (Docket Entry No. 53), is granted as to the conspiracy claim, granted as to the theory of sham to perpetrate a fraud, and denied as to the alter-ego theory.

- Woodlands's motion to reopen discovery and extend discovery deadlines, (Docket Entry No. 68), is denied.

- Kay's motion to dismiss, (Docket Entry No. 55), is granted.

- Azcarate's motion to dismiss, (Docket Entry No. 56), is granted.

---

[1]  The summary-judgment defendants' unopposed motion for leave to file excess pages in its response, (Docket Entry No. 64), is granted. Additionally, their unopposed motion for leave to file an untimely response, (Docket Entry No. 65), is granted.

[2]  The summary-judgment defendants' motion for leave to file excess pages in its motion to withdraw deemed admissions, (Docket Entry No. 83), is granted.

- Adams's motions to strike the untimely discovery responses of Oceanografia, Yanez, and Con-Dive, (Docket Entry Nos. 51, 54), are granted.

- The summary-judgment defendants' motion to substitute exhibits, (Docket Entry No. 71), is granted.

- Adams's motion for summary judgment, (Docket Entry No. 51), is granted as to liability on the breach of contract claim against OSA, denied as to the remaining issues of liability, and denied as to damages.

- Adams's motion for sanctions against Con-Dive, OSA, Yanez, and Oceanografia, (Docket Entry No. 51), is denied.

The reasons for these rulings are explained below.  A status conference and hearing are set for **October 25, 2011, at 8:30 a.m.** in Courtroom 11-B.

## I.      Background

### A.      General

The factual allegations, which, if nonconclusory, this court must take as true for purpose of the motions to dismiss, come from Adams's second amended complaint and those documents attached to the complaint.  *See Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).  Adams alleges that it entered into a contract with Con-Dive on January 29, 2007.  Under the contract, the BIMCO Supplytime 2005 charter party (the "Charter Party"), Con-Dive time-chartered an offshore service vessel, the *M/V Ocean Commander*, from Adams for a two-year term.[3] (Docket Entry No. 46, ¶ 20; *id.*, Ex. 1, at 1).  Adams is a Bermuda company, and Con-Dive is a Louisiana limited-liability company.  (*Id.*, Ex. 2, at 2).  Con-Dive repeatedly failed to meet its payment obligations under the Charter Party.  On October 12, 2008, Con-Dive owed Adams $6,541,356.34.  (*Id.*, ¶¶ 21–22; *id.*, Ex. 2, ¶ 1.1).  Adams threatened to terminate the Charter Party

---

[3]  It is unclear who signed the charter party from each company.

3

and take back the *Ocean Commander*.  Con-Dive did not want to lose use of the *Ocean Commander*.

(*Id.*, ¶¶ 23–24).   Previously, on September 1, 2008, Con-Dive's "affiliate company OSA" had

entered into two master service agreements, one with Williams Field Services–Gulf Coast Company,

L.P. and one with Discovery Producer Services LLC, both of which required use of the *Ocean*

*Commander*.  (*Id.*, ¶¶ 24–25; *id.*, Ex. 3, at 1; *id.*, Ex. 4, at 1).   Azcarate, OSA's "Director," signed

both master service agreements in that capacity.   (*Id.*, Ex. 3, at 7; *id.*, Ex. 4, at 7).   OSA is a Texas

limited-liability corporation.   (*Id.*, Ex. 2, at 2).

Because of these contracts with Williams Field Services–Gulf Coast Company and

Discovery Producer Services, Con-Dive and its affiliate company, OSA, asked Adams to agree to

assign the Charter Party to OSA.   Con-Dive and OSA were both owned by Oceanografia and Yanez.

In the complaint, Adams alleges that OSA and Con-Dive represented that OSA had the financial

ability to pay all outstanding and future liabilities and that OSA's master service agreements with

Williams Field Services and Discovery Producer Services would ensure OSA's payment of all

outstanding and future liabilities.   (*Id.*, ¶¶ 24–26). In this "Charter Assignment" contract, OSA

represented the following:

- As of October 12, 2008, OSA owed to Adams $6,541,356.34, (*id.*, ¶ 50; *id.*, Ex. 2, ¶ 1.1).

- OSA and Con-Dive would be jointly and severally liable for that amount and all future
  amounts owed under the charter party (*id.*, ¶ 50; *id.*, Ex. 2, ¶ 1.1).

- By close of business on October 17, 2008, OSA would procure $1 million and transfer
  that amount to Adams, (*id.*, ¶ 51; *id.*, Ex. 2, ¶ 2.1.1).

- By October 24, 2008, OSA would transfer an additional $1 million to Adams, , (*id.*, ¶ 52;
  *id.*, Ex. 2, ¶ 2.1.1).

- OSA had entered into a factoring agreement with Allied Capital Partners LP, under
  which Allied Capital would factor OSA's invoices from its master-services agreement
  with Williams Field Services and Discovery Producer Services to aid OSA's on-hand

capital.  Within ten days of the Charter Assignment, OSA would provide proof of this factoring agreement to Adams's attorney.  Under this factoring agreement, OSA would instruct Allied Capital to pay Adams $2.45 million for each fifteen-day invoice, (*id.*, ¶¶ 54–55; *id.*, Ex. 2, ¶ 3.3).

- OSA would timely pay all charter-hire fees, would accept charter invoices fifteen days in advance, and would pay these invoices along with an agreed monthly payment no later than thirty days from the invoice date, (*id.*, ¶ 53; *id.*, Ex. 2, ¶ 3.2).

- OSA would "clear all outstanding debts of [Con-Dive] as speedily in possible in order to limit the risk of [Con-Dive] creditor action against the [*Ocean Commander*]," (*id.*, Ex. 2, ¶ 3.6; *id.*, ¶ 56).

Based on these oral and written representations, Adams agreed to the Charter Assignment on October 17, 2008.  (*Id.*, ¶ 27).  Robert M. Ross, Adams's "Director," signed for Adams.  Clay Etheridge, Con-Dive's CEO, was listed on the Charter Assignment, but his name was crossed out and Daniel D. Tejada instead signed for Con-Dive.  Azcarate, OSA's CEO, signed for OSA in that capacity.  (*Id.*, Ex. 2, at 7).

Adams alleges that OSA and Con-Dive immediately breached the Charter Assignment.  OSA failed to transfer $1 million to Adams by October 17, 2008.  OSA failed to transfer an additional $1 million to Adams by October 24, 2008.  OSA never provided Adams with proof of its factoring agreement with Allied Capital, because OSA had never entered into such an agreement.  OSA failed to make its monthly payments on time.  OSA failed to pay Con-Dive's debts under the Charter Party arising from Con-Dive's use of the *Ocean Commander*.  That failure led many of the vessel's creditors to place maritime liens and various encumbrances on the vessel, restricting the *Ocean Commander*'s operations.  OSA now owes Adams at least $7 million.  After repeated failed attempts to get OSA to honor the Charter Assignment, Adams terminated the Charter Party and Charter Assignment on January 13, 2009.  (*Id.*, ¶¶ 48–61).

5

On February 17, 2009, Adams—invoking admiralty-and-maritime jurisdiction (28 U.S.C. § 1333), diversity jurisdiction (§ 1332), and supplemental jurisdiction (§ 1367)—filed this suit.[4] Besides suing Con-Dive and OSA, Adams also sued Oceanografia, Woodlands, TNT, Yanez, Kay, and Azcarate.  Adams alleges that these companies and individuals are so intertwined with OSA and Con-Dive that each should be held liable for OSA's and Con-Dive's liabilities.   According to Adams:

- Oceanografia is a foreign company, (Docket Entry No. 46, ¶ 15);

- Woodlands is a Texas limited-liability company, (*id.*, ¶ 18);

- TNT is a Mexico company, (*id.*, ¶ 19);

- "Yanez is or was the managing member, officer, and/or director of Defendants OSA, Con-Dive and Oceanografia," (*id.*, ¶ 14);

- "Kay is the managing member and an officer of OSA [and] the registered agent for Con-Dive and is believed to be a member and officer of Con-Dive," (*id.*, ¶ 16); and

- Azcarate "is an officer of OSA and is believed to also be a member of OSA," (*id.*, ¶ 17).

Adams contends that Yanez, Kay, Azcarate, Oceanografia, Woodlands, and TNT conspired with OSA and Con-Dive to fraudulently induce Adams to enter into the Charter Party.  (*Id.*, ¶ 31). Adams also asserts that Woodlands and TNT share intermingled assets with OSA, Con-Dive, and

---

[4]  According to the Fifth Circuit:

> Courts of admiralty have jurisdiction over a contractual dispute if the contract at issue is a maritime contract.  A maritime contract is one "relating to a ship *in its use as such*, or to commerce or navigation on navigable waters, or to transportation by sea or to maritime employment." *J.A.R., Inc. v. M/V Lady Lucille*, 963 F.2d 96, 98 (5th Cir. 1992) (emphasis added). . . . To determine whether a contract is maritime, we look to whether the "nature of the transaction was maritime" and "whether the services performed under the contract are maritime in nature." *Exxon Corp. v. Central Gulf Lines, Inc.*, 500 U.S. 603, 611, 612 (1991).

*Gulf Coast Shell & Aggregate LP v. Newlin*, 623 F.3d 235, 240 (5th Cir. 2010).  Here, the Charter Party and Charter Assignment concern Con-Dive's, and later OSA's, charter of the vessel *M/V Ocean Commander* for use on the waters.

Oceanografia, because all are owned and operated by Yanez and Azcarate. Adams has attached copies of wire transfers from accounts owned by Oceanografia, Woodlands, and TNT to Adams's account for use of the *Ocean Commander*. (*Id.*, ¶ 32; *id.*, Exs. 5–17). Adams has also attached copies of e-mails exchanged among various officers of these companies as further evidence that each of these companies should be viewed as one and the same. (*Id.*, ¶¶ 39–45; *id.*, Exs. 19–22).

On August 16, 2010, this court granted Adams's motion for leave to file an amended complaint, (Docket Entry No. 35). In the second amended complaint, (Docket Entry No. 46),[5] Adams first asserts a breach of contract claim against Con-Dive and OSA. Second, Adams asserts a fraud claim against Con-Dive and OSA in connection with securing the Charter Assignment. Third, Adams asserts a fraudulent inducement claim against Con-Dive and OSA, also relating to the Charter Assignment. Fourth, Adams asserts a conspiracy claim against all defendants: OSA, Con-Dive, Oceanografia, Woodlands, TNT, Yanez, Kay, and Azcarate. Adams seeks to pierce OSA's and Con-Dive's corporate veils so as to hold Oceanografia, Woodlands, TNT, Yanez, Kay, and Azcarate jointly and severally liable for the actions of OSA and Con-Dive. *See Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1035 (5th Cir. 2010) ("Piercing the corporate veil is not a separate cause of action, but a method to impose personal liability on shareholders and corporate officers who would otherwise be shielded from liability for corporate debt."). Adams seeks compensatory damages of at least $7 million, exemplary damages, attorney's fees and court costs, and pre- and post-judgment interest.

**B.    Discovery**

---

[5] Adams did not seek leave to file a second amended complaint before doing so. This court, however, granted leave to do so when it recognized that the second amended complaint mooted the defendants' motion to dismiss. (Docket Entry No. 48).

Discovery disputes, rather than the strengths and weaknesses of the merits, dominate this case.  Adams previously moved to compel Con-Dive, OSA, Yanez, and Oceanografia to respond to its first set of interrogatories and requests for production.  (Docket Entry No. 37).  This court extended the deadline for these defendants' discovery responses to October 8, 2010 and denied the motion to compel.  (Docket Entry No. 42).  An e-mail exchange took place between the lawyers on October 8.  (Docket Entry No. 54, Ex. C).  On that date, at approximately 3:30 p.m., the defendants' attorney, Alfred Rufty, asked Adams's attorney, Timothy Strickland, for an additional extension until October 11 to respond to the discovery requests. Rufty stated that he was "unable today to get our clients' formal approval to send out the responses put together by our office based on the information and documents obtained."  Strickland did not agree to the extension, although it is unclear what he said in communicating this.  Rufty stated, "Presumably, I will get the consent from my clients some time this weekend and will email the responses at that time[.]"  Rufty concluded his e-mail by writing, "With respect to the requests for admissions to Yanez, OSA International, Con-Dive, and Oceanografia, all are denied."  Strickland responded that such a "'blanket' denial" contravened the Federal Rules of Civil Procedure and "is likely sanctionable."  (*Id.*)

On January 17, 2011—over three months after the court-ordered deadline for discovery responses—Rufty submitted discovery responses on behalf of Oceanografia.  (Docket Entry No. 81, Ex. 7).  On February 10, Rufty submitted discovery responses on behalf of Yanez.  (Docket Entry No. 54, Ex. E).  On February 11, Rufty submitted discovery responses on behalf of Con-Dive.  (*Id.*, Ex. D).  The record does not show that Rufty ever submitted discovery responses on behalf of OSA.

On February 11, 2011—the same day Rufty submitted discovery responses on behalf of Con-Dive—Adams moved to strike all the discovery responses that had been filed after the court-

8

imposed deadline and sought sanctions for violations of the court's discovery orders.  (Docket Entry No. 51).  Adams renewed its motion to strike on February 16.  (Docket Entry No. 54).  The defendants responded on March 9, (Docket Entry No. 62), and Adams replied on April 1, (Docket Entry No. 69). On September 28, 2011—nearly one year after the October 2010 discovery-response deadline—the defendants moved under Rule 36(b) to withdraw the deemed admissions of Con-Dive, OSA, Oceanografia, Yanez, Azcarate, and Kay.  (Docket Entry No. 81).

## II.     The Motions to Dismiss

### A.     The Legal Standard under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed where the plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  A complaint must contain "enough facts to state a claim to relief that is plausible on its face" to withstand a Rule 12(b)(6) motion.  *Iqbal*, 129 S. Ct. at 1949.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Facial plausibility "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (quoting *Twombly*, 550 U.S. at 555).  Nor is facial plausibility "akin to a 'probability requirement'"; rather, "it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). Facial plausibility requires "the plaintiff [to] plead[] factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under *Iqbal*, a complaint does not suffice if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). Courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentiello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010). Although "[a] complaint does not need detailed factual allegations, [it] must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks omitted).

A motion to dismiss for failure to plead fraud claims with the particularity required by Rule 9(b) is properly raised in a motion to dismiss for failure to state a claim. *E.g.*, *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 n.8 (5th Cir. 2009). Rule 9(b) mandates:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

FED. R. CIV. P. 9(b). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Shandong Yinguang*, 607 F.3d at 1032 (internal quotation marks omitted). The plaintiff "must specify the statements contended to be fraudulent, identify the speaker, state when and where

the statements were made, and explain why the statements were fraudulent." *Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (internal quotation marks omitted). A long pleading is not necessarily pleading with particularity. *See id.* ("A complaint can be long-winded, even prolix, without pleading with particularity. Indeed, such a garrulous style is not an uncommon mask for an absence of detail." (internal quotation marks omitted)). In addition, "a plaintiff alleging a conspiracy to commit fraud must 'plead with particularity the conspiracy as well as the overt acts taken in furtherance of the conspiracy.'" *Kanneganti*, 565 F.3d at 193 (quoting *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1097 (D.C. Cir. 2008) (internal alteration omitted)).

When a plaintiff's complaint fails to state a claim, a district court generally should provide the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case"); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion." (internal citation omitted)). Nevertheless, "[d]enial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, *repeated failure to cure deficiencies*, undue prejudice to the opposing party, or *futility of a proposed amendment*." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010) (emphasis added). "[A]t some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit."

*Schiller v. Physicians Resource Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (quoting *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986)).  For that reason, a district court has broad discretion to dismiss a complaint without leave to amend "where the plaintiff has previously been granted leave to amend [to cure pleading deficiencies] and has subsequently failed to add the requisite particularity to its claims[.]"  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009); *see also Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (affirming a district court's dismissal for failure to state a claim without leave to amend where the court "instructed [the plaintiffs] to plead their fraud claim with greater particularity, but the amended complaint was still woefully inadequate").

### B.     The Motions Against Woodlands, Kay, and Azcarate

After Woodlands failed to respond to the second amended complaint, Adams moved for default judgment.  (Docket Entry No. 50).  Woodlands responded by moving to dismiss the second amended complaint for failure to state a claim, (Docket Entry No. 53).  Woodlands had previously moved to dismiss the first amended complaint for failure to state a claim.  (Docket Entry No. 45).  Adams responded to Woodlands's motion to dismiss the second amended complaint.  (Docket Entry No. 60).  In that response, Adams did not reassert any argument that it was entitled to default judgment against Woodlands.  This court construes Adams's response as withdrawing its motion for default judgment, and that motion is denied as moot.

Kay and Azcarate also moved to dismiss the claims asserted against them in the second amended complaint for failure to state a claim.  (Docket Entries No. 55, 56).  Adams responded in opposition.  (Docket Entry No. 61).

#### 1.     The Conspiracy Claims

Woodlands argues that the claim of conspiracy to commit fraud[6] must be dismissed under Rule 12(b)(6).  Woodlands explains:

> Nowhere in the Second Amended Complaint does Adams allege facts to substantiate any—much less all—of the elements of a fraud claim against Woodlands.  Adams fails to identify any misrepresentations of material fact by Woodlands; it fails to identify any facts evincing an intent to defraud by Woodlands; it fails to identify any facts indicating that Adams relied on any (nonexistent) representations by Woodlands; and it fails to identify facts showing that Woodlands caused Adams harm.

(Docket Entry No. 53, at 7–8).  Adams counters that "Woodlands' participation in the fraud was through Yanez, its owner/controller," and that the complaint asserts numerous facts showing how Yanez perpetuated the fraud.  (Docket Entry No. 60, at 10–11).

Kay and Azcarate also moved to dismiss the claim of conspiracy to commit fraud.[7]  Kay and Azcarate argue that Adams failed to allege underlying facts sufficient to state a conspiracy claim against them.  (*See* Docket Entry No. 55, at 11–12; Docket Entry No. 56, at 12).  Adams counters with an argument that largely mirrors its counterargument to Woodlands.  (Docket Entry No. 61, at 6–7).[8]

---

[6]  Both Woodlands and Adams proceed under the presumption that the claim pleaded against Woodlands is for fraud.  On the face of the complaint, the fraud claim was alleged only against OSA and Con-Dive.  Adams alleged, however, that Woodlands (in addition to the other defendants) *conspired* to commit fraud against Adams.  (*See generally* Docket Entry No 46, ¶¶ 63–71).

[7]  Although each has argued that the breach of contract, fraud, and fraudulent inducement claims should be dismissed, the only claim asserted specifically against Kay and Azcarate is the conspiracy claim.  *See supra* note 6.  Adams seeks to hold Kay and Azcarate liable for the underlying causes of action through veil-piercing and alter-ego theories.

[8]  Adams also relies on Kay's and Azcarate's deemed admissions of conspiracy to defeat the motion to dismiss.  (Docket Entry No. 61, at 7–8).  The deemed admissions are not included in this analysis for two reasons.  First, the defendants have moved to withdraw them, and that motion is not yet ripe for consideration.  Second, if that motion is denied, this court would have to grant Adams's motion for summary judgment against these and other defendants, which would make the motion to dismiss on this basis moot.  If that motion to withdraw is granted, summary judgment would be denied and the issue would be the sufficiency of the complaint without regard to the deemed admissions.

The conspiracy claim is pleaded without particularity. Adams has pleaded with particularity facts supporting its fraud and fraudulent-inducement claims against OSA and Con-Dive. Its allegations of the conspiracy, however, are conclusory:

> Defendants OSA, Con-Dive, Oceanografia, Kay, Azcarate, Woodlands, and TNT each individually and/or through Defendant Yanez conspired to defraud Adams. Together they agreed to, intended, and did accomplish the fraud perpetuated upon Adams[] as described above. One or all of the members committed unlawful, overt acts to further the fraud perpetrated upon Adams via oral and written misrepresentations to Adams to induce Adams to enter into enforceable contracts with the express intent of not paying Adams or knowing that OSA and Con-Dive did not have the financial ability to pay Adams—all for their sole benefit as members, shareholders, officers and directors of OSA and Con-Dive.

(Docket Entry No. 46, ¶ 71). This paragraph sets out the conspiracy claim. The paragraph is "a formulaic recitation of the elements of a cause of action" and, as to the facts surrounding the conspiracy, "tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557). There is no allegation as to how Woodlands, Kay, or Azcarate engaged in the conspiracy, including what actions they took in furtherance of the conspiracy. The complaint concedes that Woodlands, Kay, and Azcarate may not have committed conspiracy at all. (Docket Entry No. 46, ¶ 71 ("*One or all* of the members committed unlawful, overt acts . . ." (emphasis added)). The conspiracy allegations against Woodlands, Kay, and Azcarate lack the particularity required by Rule 9(b). *See Kanneganti*, 565 F.3d at 193. Their motions to dismiss this claim are granted. Leave to amend is denied because Adams has twice had the opportunity to amend its complaint and because Adams has admitted that it pleaded the fraud with as much particularity as it could, after it had the opportunity to conduct discovery. (Docket Entry No. 60, at 10 ("The fraud perpetrated upon Adams could not be more specifically laid out than it already has been."); Docket Entry No. 61, at 6 (same)).

2.    *Veil Piercing*

The three most common bases for piercing the corporate veil under Texas law are that "(1) the corporation is the alter ego of its owners or shareholders, (2) the corporation is used for an illegal purpose, and (3) the corporation is used as a sham to perpetrate a fraud." *S.E.C. v. Resource Dev. Int'l, LLC*, 487 F.3d 295, 302 (5th Cir. 2007) (internal quotation marks omitted); *see also Castleberry v. Branscum*, 721 S.W.2d 270, 272 & nn.2–3 (Tex. 1986) (listing the grounds for veil-piercing).  Texas courts apply the same veil-piercing principles to both corporations and limited-liability corporations. *McCarthy v. Wani Venture, A.S.*, 251 S.W.3d 573, 590 (Tex. App.—Houston [1st dist.] 2007, pet. denied); *accord Roustan v. Sanderson*, — S.W.3d —, 2011 WL 4502265 (Tex. App.—Dallas 2011, no pet. h.).  To state a claim that a defendant is using a corporation to perpetrate a fraud, the plaintiff must allege sufficient facts showing that the defendant has committed fraud against the plaintiff.  *See Shandong Yinguang*, 607 F.3d at 1035 (citing Tex. Bus. Orgs. Code § 21.223(b) and *Kingston v. Helm*, 82 S.W.3d 755, 765 (Tex. App.—Corpus Christi 2002, pet. denied)).

"Under Texas law, '[a]lter ego applies when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice.'"  *Bollore S.A. v. Import Warehouse, Inc.*, 448 F.3d 317, 325 (5th Cir. 2006) (quoting *Castleberry*, 721 S.W.2d at 272); *see also Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990).  To determine whether an individual should be considered the alter ego of a corporation, Texas courts consider:

> [1] the total dealings of the corporation and the individual, including [a] the degree to which corporate formalities have been followed and [b] corporate and individual property have been kept separately, [2] the amount of [a] financial interest, [b] ownership, and [c] control the individual maintains over the corporation, and [3] whether the corporation has been used for personal purposes.

*Bollore*, 448 F.3d at 325 (quoting *Permian Petroleum Co. v. Petroleos Mexicanos*, 934 F.2d 635,

643 (5th Cir. 1991)).[9]  "The great weight of Texas precedent indicates that, for the alter ego doctrine

to apply against an individual under this test, the individual must own stock in the corporation."

*Bollore*, 448 F.3d at 325.  In the context of the limited-liability corporation, the alter-ego doctrine

cannot apply to a person who is not a member of that corporation.  *Cf. McCarthy*, 251 S.W.3d at 590

(principles applying to corporations apply equally to limited-liability corporations).

     If the alter-ego theory is applied to corporate entities such as a parent and its subsidiary or

affiliate, the analysis under Texas law is more streamlined.  As stated by one Texas court:

> Alter ego comes into play where a corporation is organized and operated as a mere
> tool or business conduit of another corporation.  Alter ego applies when there is such
> unity between the parent corporation and its subsidiary that the separateness of the
> two corporations has ceased and holding only the subsidiary corporation liable would
> result in injustice.

*Harwood Tire–Arlington, Inc. v. Young*, 963 S.W.2d 881, 885 (Tex. App.—Forth Worth 1998, pet.

dism'd by agreement) (internal quotation marks and citations omitted); *accord, e.g.*, *Gardemal v.

Westin Hotel Co.*, 186 F.3d 588, 593 (5th Cir. 1999).  "Alter ego is demonstrated 'by evidence

showing a blending of identities, both formal and substantive, between two corporations.'"

*Gardemal*, 186 F.3d at 593 (quoting *Hideca Petroleum Corp. v. Tampimex Oil Int'l Ltd.*, 740

S.W.2d 838, 843 (Tex. App.—Houston [1st dist.] 1987, no writ)); *see also United States ex rel.

CMC Steel Fabricators, Inc. v. Harrop Constr. Co.*, 131 F. Supp. 2d 882, 894 (S.D. Tex. 2000).

          a.     Woodlands

---

[9]  In its response to Woodlands's motion to dismiss, Adams lists fifteen factors that this court should consider in determining whether Woodlands is the alter ego of the other defendants.  (Docket Entry No. 60, at 8–9 (citing *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 418 (5th Cir. 2006)).  *Bridas* applied federal common law; this case involves Texas state law.

Woodlands asserts that the allegations of overlapping ownership in the second amended complaint and the attachment of two wire transfers sent from Woodlands to Adams are not sufficient to allow Adams to hold Woodlands liable as an alter ego of Con-Dive and OSA.  (Docket Entry No. 53, at 8–10).  Adams responds that these allegations are sufficient to survive the motion to dismiss. (Docket Entry No. 60, at 8–10).

Adams asserts that Woodlands participated in a sham to perpetrate fraud.  As discussed above, Adams's complaint fails to allege facts showing that, or how, Woodlands participated in the alleged fraud against Adams, which is required to state a claim for liability under this veil-piercing theory.  *See Shandong Yinguang*, 607 F.3d at 1035.  Adams has not alleged facts necessary for the theory  of liability based on a sham to perpetrate fraud to survive the motion to dismiss.

Second, Adams contends that Woodlands is an alter ego for both OSA and Con-Dive.  In support of this theory, Adams alleges that Yanez, the managing member of OSA, Con-Dive, and Oceanografia, is a principal owner of Woodlands, (Docket Entry No. 46, ¶¶ 14, 32); that Azcarate, an OSA and Oceanografia corporate officer, is a principal owner of Woodlands, (*id.*, ¶¶ 17, 29, 32); and that Barry Barnes served as a corporate officer for Con-Dive, Woodlands, and Oceanografia. (*Id.*, ¶ 42).  To its complaint, Adams attached wire transfers from Woodlands to Adams.  These wire transfers support its allegation that Woodlands was paying the corporate debts of OSA and Con-Dive.  (*Id.*, Exs. 14, 15).  These specific factual allegations are sufficient to demonstrate the plausibility of blended identities between Woodlands on the one hand, and Con-Dive and OSA on the other hand.  *See Gardemal*, 186 F.3d at 593.  Woodlands's motion to dismiss the alter-ego theory of liability against it is denied.[10]

---

[10]  Woodlands also has moved to reopen discovery and to extend discovery deadlines.  (Docket Entry No. 68).  Whether doing so will be necessary depends on the summary-judgment defendants' pending motion to withdraw deemed

b.      *Kay and Azcarate*

Kay and Azcarate move to dismiss Adams's attempt to hold them liable for OSA's and Con-Dive's claims through an alter-ego theory.   Each argues that Adams has failed to allege facts showing that they used OSA and Con-Dive to perpetrate a fraud against Adams or that there are facts alleged to state a theory of alter-ego liability.   (Docket Entry No. 55, at 13–14; Docket Entry No. 56, at 14–15).   Adams has not responded to either argument.   (*See generally* Docket Entry No. 61).

To the extent that Adams attempts to hold Kay and Azcarate liable through a theory of sham to perpetrate a fraud, Adams alleged no facts in its complaint that Kay and Azcarate committed fraud, whether actual or constructive.   Additionally, for the reasons already stated, Adams failed to state a claim that Kay and Azcarate conspired to commit fraud.   Adams has failed to state a claim that Kay and Azcarate used OSA and Con-Dive as a sham to perpetrate fraud.   *See Shandong Yinguang*, 607 F.3d at 1035.

The only facts alleged with specificity as to Kay's liability under an alter-ego theory for the actions of OSA and Con-Dive is that she is the managing member and a corporate officer of OSA, that she is the registered agent for Con-Dive, and that she is believed to be a corporate officer and member of Con-Dive. (Docket Entry No. 46, ¶ 16).   The only facts alleged with specificity as to the alter-ego basis to hold Azcarate liable for the actions of OSA and Con-Dive is that he is a corporate officer of OSA and is believed to be a member of OSA.   (*Id.*, ¶ 17).   Those facts are insufficient to state a plausible claim that Kay and Azcarate are alter egos of OSA or Con-Dive.   Adams's

admissions.  (Docket Entry No. 81).  As discussed more fully below, the motion to withdraw deemed admissions is not ripe.  The motion to reopen discovery and to extend discovery deadlines is denied, but without prejudice.  If the motion to withdraw admissions is granted, Woodlands may refile the motion to reopen discovery and extend the discovery deadlines.

allegations that Kay and Azcarate disregarded OSA's and Con-Dive's corporate formalities and that they intermingled OSA's and Con-Dive's assets and liabilities are conclusory and unsupported by factual allegations. (Docket Entry No. 46, ¶ 75).  Adams similarly fails to allege facts showing the amount of financial interest, ownership, or control that Kay and Azcarate maintain over OSA or Con-Dive, other than a vague statement that Adams believes that Kay and Azcarate are members of their respective limited-liability corporations.  And Adams's allegations that Kay and Azcarate used OSA and Con-Dive "for their direct personal benefit" is conclusory and unsupported by any factual allegation whatsoever.  (*Id.*)  Adams attempts to claim that Kay and Azcarate are alter egos of OSA and Con-Dive through "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).  Kay's and Azcarate's motion to dismiss Adams's theory of liability against them is granted.  Leave to amend only as to the alter-ego theory is granted because, based on the specific facts alleged in the second amended complaint, it is premature to conclude that amendment would be futile.

## III.   Adams's Motion to Strike the Discovery Responses and the Motion for Summary Judgment

### A.   The Motion to Strike the Discovery Responses

This court ordered the defendants to respond to Adams's discovery requests by October 8, 2010.  These requests included requests for admissions submitted under Rule 36(a) that, among other things, essentially asked each of the defendants to admit full liability on each of Adams's claims.  These requests, many of which are the same for each summary-judgment defendant, are too numerous to list.  The follow examples are typical:

- To Yanez: "Please admit that you conspired with one or more of the defendants to perpetrate a fraud upon Adams and cause OSA and Con-Dive to breach their agreements with Adams."  (*Id.*, Ex. D, RFAs ¶ 55).

19

- To Oceanografia: "Please admit that Amado Yanez and Oceanografia both knew at the time the Charter Assignment . . . was negotiated and executed that neither OSA nor Con-Dive had the financial ability or strength to pay the moneys owed[.]" (*Id.*, Ex. E, RFAs ¶ 63).

- To Con-Dive: "Please admit that Con-Dive is responsible for $6,541,358.34 in unpaid charter hire and other services still due to Adams." (*Id.*, Ex. K, RFAs ¶ 22).

- To OSA: "Please admit that OSA, thorough its employees, agents, owners, contractors or other personnel fraudulently represented that the amounts due Adams under the Charter, Master Services Agreements, and/or the Charter and the Charter Assignment . . . would be paid by Oceanografia and/or Amada Yanez." (*Id.*, Ex. L, RFAs ¶ 32).

- To Azcarate: "Please admit that you used OSA in connection with the Charter Assignment and monies owed to Adams for the use of the M/V OCEAN COMMANDER, for the purpose of perpetrating an actual fraud on Adams primarily for at least one of the defendants' direct personal benefit." (*Id.*, Ex. T, RFAs ¶ 108).

- To Kay: "Please admit that you used OSA's corporate form as a sham to perpetuate a fraud upon Adams for the benefit of Oceanografia in connection with the use of the M/V OCEAN COMMANDER." (*Id.*, Ex. U, RFAs ¶ 147).

The summary-judgment defendants failed to respond to any of the admissions by the discovery deadline.[11]  Adams did not consent or stipulate to extending this deadline.  *See* FED. R. CIV. P. 36(a)(3), 29(b).  The summary-judgment defendants did not seek an extension of this already extended deadline from the court.

Adams moved for summary judgment largely on the basis that the deemed admissions established liability and damages.  The summary-judgment defendants opposed the motion by objecting that the requests for admissions impermissibly called for legal conclusions.  (*See* Docket

---

[11]  As Strickland correctly pointed out to Rufty, the blanket denial in his e-mail—to the extent Rufty intended it to be his clients' official response to the discovery requests—was insufficient to deny the requested admissions under the Federal Rules.  Rule 36 requires that denials be stated with specificity and "fairly respond to the substance of the matter[.]"  FED. R. CIV. P. 36(a)(4).  A general and blanket denial does neither.  *See Chevron Pipe Line Co. v. Pointe Perry, L.C.*, No. 2:08cv981, 2010 WL 1443891, at *1–2 (D. Utah Apr. 9, 2010).  And even assuming that a blanket denial sufficed under the Federal Rules, Rufty failed to certify the response under Rule 26(g).  *See generally, e.g., Ibarra v. Baker*, 338 F. App'x 457, 470–71 (5th Cir. 2009); *Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 407–08 (7th Cir. 1998).

Entry No. 63, at 19–25); *see, e.g.*, *Warnecke v. Scott*, 79 F. App'x 5, 6 (5th Cir. 2003) (per curiam)

(citing *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001)); 8B CHARLES ALAN WRIGHT, ET AL.,

FEDERAL PRACTICE & PROCEDURE § 2255 (3d ed. 2010).  The summary-judgment defendants also

object on the basis that the requests were impermissibly vague.  (*See* Docket Entry No. 63, at

20–22).        Federal Rule of Civil Procedure 36(a)(3) requires that a written answer or objection

to a request for admission must be filed within 30 days after it is served unless a longer time for

responding is stipulated under Rule 29 or ordered by the court.  *See* FED. R. CIV. P. 36(a)(3).  A

failure to file timely results in the matter being "admitted."  *Id.*; *Am. Auto. Ass'n v. AAA Legal Clinic

of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1119 (5th Cir. 1991); 8B FEDERAL PRACTICE &

PROCEDURE § 2262.  The summary-judgment defendants' failure to object or answer the requests

for admission within the deadline, or to move for additional time when Adams did not stipulate to

an extension, resulted in each request being admitted.  *See* FED. R. CIV. P. 36(a)(3); 8B FEDERAL

PRACTICE & PROCEDURE § 2259; *see also, e.g.*, *In re Carney*, 258 F.3d at 418–19 (explaining that

because a party failed to respond to requests for admission within the Rule 36 time period, those

requests were deemed admitted).

        Despite these deemed admissions, Rufty sent some discovery responses to Adams beginning

three months after the deadline.  On January 17, 2011, Rufty submitted discovery responses on

behalf of Oceanografia.  (Docket Entry No. 81, Ex. 7).  On February 10, Rufty submitted discovery

responses on behalf of Yanez.  (Docket Entry No. 54, Ex. E).  On February 11, Rufty submitted

discovery responses on behalf of Con-Dive.  (*Id.*, Ex. D).[12]  That same day, Adams moved to strike

those responses and for sanctions in the form of a default judgment against the defendants for their

---

[12]  The record does not show that Rufty submitted discovery responses on behalf of OSA, Azcarate, or Kay.

alleged discovery abuses. (Docket Entry No. 51).[13]  The summary-judgment defendants respond that Adams waived these objections to the discovery responses and waived the right to move to strike them.  According to them, Adams was required to raise any discovery objection to the court before January 15, 2011, the court-ordered deadline for discovery to be complete.  (Docket Entry No. 62, at 2–3 (citing Docket Entry No. 42)).[14]  In other words, according to the defendants, Adams had to object to the discovery responses before they were even served.  According to the defendants, Adams is barred by the discovery deadline from objecting to their discovery responses but *they* are not barred by that deadline from serving those responses.

Adams could not have moved to enforce its discovery rights with respect to the untimely discovery responses within the  discovery deadline, because those responses were not filed until after that deadline had passed.  Adams filed this motion 25 days after the first untimely responses, one day after the second untimely responses, and the same day as the third untimely responses.  Adams's motion is timely; waiver does not apply.  Moreover, based on the defendants' argument, their discovery responses and motions, including their motion to withdraw deemed admissions, (Docket Entry No. 81)—filed over eight months after discovery closed—would be precluded or waived.  The defendants' argument is unpersuasive.  "District courts have broad discretion in all discovery matters."  *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006) (internal quotation marks omitted).  This court will consider Adams's motion to strike and, once it is ripe, the defendants' motion to withdraw the deemed admissions.

---

[13]  Adams also moved for summary judgment in this motion, which will be considered later.

[14]  This court cannot help but note the extreme irony in this argument: the summary-judgment defendants seek refuge behind a scheduling order that they themselves, without any legitimate excuse, have blatantly disregarded.

The Fifth Circuit "has stressed that a deemed admission can only be withdrawn or amended by motion in accordance with Rule 36(b)." *Covarrubias v. Five Unknown INS/Border Patrol Agents*, 192 F. App'x 247, 248 (5th Cir. 2006) (quoting *In re Carney*, 258 F.3d at 419). The summary-judgment defendants did not move to withdraw or amend their deemed admissions before serving their belated discovery responses.[15] Their responses were improper because they had already responded to the requests through their deemed admissions. Accordingly, Adams's motion to strike these untimely responses is granted.[16]

### B.    Adams's Motion for Summary Judgment[17]

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "The movant bears the

---

[15]  Because the summary-judgment defendants are represented by counsel, this court will not construe their argument that almost all of the requests were legally improper on their face, as argued within the response to the summary-judgment motion, as a motion to withdraw or for leave to amend the deemed admissions. They made that motion a few days ago, and it is not yet ripe. (Docket Entry No. 81).

[16]  The summary-judgment defendants contend that this court has no power to strike untimely discovery responses. The Fifth Circuit says otherwise. *See In re Carney*, 258 F.3d a 420 n.5; *Dukes v. S.C. Ins. Co.*, 770 F.2d 545, 548–49 (5th Cir. 1985); *see also Metpath, Inc. v. Modern Medicine*, 934 F.2d 319 (table), 1991 WL 87534, at *3 (4th Cir. May 29, 1991) (same).

[17]  As summary-judgment evidence, Adams submitted the following evidence: the Charter Party, (Docket Entry No. 51, Ex. A); the Charter Assignment, (Ex. B); the affidavit of Robert M. Ross, (Ex. C); the unanswered discovery requests to Yanez, (Ex. D), and Oceanografia, (Ex. E); the declaration of Daniel Tejada, (Ex. F); the deposition of Hermilio Escobedo, (Ex. G); wire transfers to Adams from Oceanografia, (Ex. H), TNT, (Ex. I), and Woodlands, (Ex. J); the unanswered discovery requests to Con-Dive, (Ex. K), and OSA, (Ex. L); an e-mail from Rufty, (Ex. M); Oceanografia's untimely discovery responses, (Ex. N); the deposition of Yanez, (Ex. O); the affidavit of Hermilio Escobedo, (Ex. P); the guarantee signed by Yanez, (Ex. Q); the affidavit of Mark Lewis, (Ex. R); the deposition of Azcarate, (Ex. S); and the unanswered discovery requests to Padilla, (Ex. T), and to Kay, (Ex. U).

The summary-judgment defendants submitted the unsigned declaration of Azcarate, (Docket Entry No. 66), and the signed declaration of Juan Carlos Hernandez and attached e-mails, (Docket Entry No. 67). The summary-judgment defendants later moved for leave to substitute a signed declaration of Azcarate for the unsigned version of the same declaration, filed as part of the opposition to Adams's summary-judgment motion. (Docket Entry No. 71). The plaintiff opposed this motion on two grounds. (Docket Entry No. 72). This court rejects both grounds. First, in *White v. Allstate Insurance Company*, the court declined to allow the substitution of a signed declaration for an unsigned declaration for purposes of deciding a motion to remand where, among other things, the statements conflicted with earlier statements by that same person. 513 F. Supp. 2d 674, 680–81 (E.D. La. 2007). Here, there are no conflicting statements by the same person on the record. Second, Azcarate's statements are based on his personal experiences during his tenure as OSA's director. The evidence is competent summary-judgment evidence. The motion for leave to substitute is granted.

burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (internal quotation marks omitted).

The moving party bears a heavier burden when seeking summary judgment on a claim or defense on which it would bear the burden of proof at trial. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In that case, "he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant [summary] judgment in his favor." *Id.* (emphasis in original); *see also Meecorp Capital Mkts. LLC v. Tex-Wave Indus. LP*, 265 F. App'x 155, 157 (5th Cir. 2008) (per curiam) (quoting *Fontenot*). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Meecorp Capital Mkts.*, 265 F. App'x at 158 (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Adams's summary-judgment motion rests almost entirely on the deemed admissions. As discussed previously, those admissions establish the defendants' liability on all the claims, theories, and damages sought by Adams. Deemed admissions "can lead to a grant of summary judgment against the non-responding party." *Murrell v. Casterline*, 307 F. App'x 778, 780 (5th Cir. 2008) (citing *Dukes*, 770 F.2d at 548–49). "Since Rule 36 admissions, whether express or by default, are conclusive as to the matters admitted, they cannot be overcome at the summary judg[]ment stage by contradictory affidavit testimony or other evidence in the summary judgment record." *In re Carney*, 258 F.3d at 420. Unless the motion to withdraw these deemed admissions is granted, regardless of the merits of the summary-judgment defendant's objections to the underlying requests, this court would be required to grant Adams's motion for summary judgment.

24

Rule 36 permits withdrawal or amendment of admissions "[1] if it would promote the presentation of the merits and [2] if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." FED. R. CIV. P. 36(b); *see also In re Carney*, 258 F.3d at 419 ("In order to allow withdrawal of a deemed admission, Rule 36(b) requires that a trial court find that withdrawal or amendment: 1) would serve the presentation of the case on its merits, but 2) would not prejudice the party that obtained the admissions in its presentation of the case."). "The first half of the test in Rule 36(b) is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." *Conlon v. United States*, 474 F.3d 616, 622 (9th Cir. 2007) (internal quotation marks omitted); *accord, e.g.*, *Le v. Cheesecake Factory Restaurants Inc.*, No. 06-20006, 2007 WL 715260, at *2 (5th Cir. Mar. 6, 2007). As for the second half, courts focus on "the timing of the motion for withdrawal as it relates to the diligence of the party seeking withdrawal and the adequacy of time remaining for additional discovery before trial." *Le*, 2007 WL 715260, at *3 (citing *Branch Banking & Trust Co. v. Deutz-Allis Corp.*, 120 F.R.D. 655, 660 (E.D.N.C. 1988)). Three circuits have held that mere "reliance on a deemed admission in preparing a summary judgment motion does not constitute prejudice." *Conlon*, 474 F.3d at 624 (9th Cir.) (citing *In re Durability Inc.*, 212 F.3d 551, 556 (10th Cir. 2000) and *F.D.I.C. v. Prusia*, 18 F.3d 637, 640 (8th Cir. 1994)). Importantly, even when the Rule 36 requirements are met, district courts retain "discretion to deny a request for leave to withdraw and or amend an admission." *In re Carney*, 258 F.3d at 419; *accord, e.g.*, *Conlon*, 474 F.3d at 624.

Adams has not yet had an opportunity to respond to the summary-judgment defendants' motion to withdraw their deemed admissions. Ruling on that motion is premature. As a result, ruling on the summary-judgment motion is equally premature. The court therefore denies the summary-judgment motion—except as to the portion seeking summary judgment as to OSA's

liability for breach of contract—without prejudice. If the motion to withdraw the deemed admissions is denied, Adams may file a motion for summary judgment based on those deemed admissions. If the motion to withdraw the deemed admissions is granted, there would be a multitude of factual disputes as to all of the liability claims and damages issues against the defendants—except, as noted, the claim that OSA is liable to Adams for breach of contract—and summary judgment would be inappropriate.

Summary judgment for Adams is appropriate on its breach of contract claim against OSA, without regard to whether the deemed admissions are withdrawn.[18] Under Texas law, a breach of contract claim has four elements: "1) the existence of a valid contract; 2) performance or tendered performance by the plaintiff; 3) breach of the contract by the defendant; and 4) damages to the plaintiff resulting from the breach." *Amigo Broadcasting, LP v. Spanish Broadcasting Sys., Inc.*, 521 F.3d 472, 479 (5th Cir. 2008) (internal quotation marks omitted); *accord, e.g.*, *Hunter v. PriceKubecka, PLLC*, 339 S.W.3d 795, 802 (Tex. App.—Dallas 2011, no pet.). Disregarding the deemed admissions, the summary-judgment record establishes two contracts: the Charter Party and the Charter Assignment. (Docket Entry No. 51, Exs. A, B). The declarations submitted by the summary-judgment defendants establish that Adams performed the Charter Party and Charter Assignment by making the *Ocean Commander* available to OSA. (*See* Docket Entry No. 67, ¶¶ 1–4; Docket Entry No. 66, ¶ 5). Azcarate's declaration, again attached by these defendants, concedes that OSA breached the contract. (Docket Entry No. 66, ¶ 6 ("Without timely payments from Williams, OSA International could not make timely payments to Adams.")). Finally, the affidavit of Adams's

---

[18] Summary judgment is denied on Adams's breach of contract claim against Con-Dive. The evidence presented focused on OSA's, not Con-Dive's, breach. The defendants allege that, as of the lawsuit, Con-Dive had settled its payment obligations. If the deemed admissions are withdrawn, factual disputes will remain as to whether Con-Dive breached its obligations vis-à-vis the charter assignment contract and Adams's claim for damages from Con-Dive's breach.

director and legal counsel states that Adams was damaged when OSA and Con-Dive failed to meet their payment obligations under the Charter Party and Charter Assignment. (Docket Entry No. 51, Ex. C, ¶¶ 8–10). As Adams points out, the summary-judgment defendants conceded in their response that OSA had breached the contract, while disputing the amount of damages. In their words, "While OSA International ('OSA') concedes that some money (in an indeterminate amount) is due Adams under the Charter Assignment, the amount claimed by Adams is greatly exaggerated." (Docket Entry No. 63, at 1–2). The defendants' argument as to OSA focuses on the amount of damages due to Adams. The defendants do not argue that OSA is not liable for breach of contract. The motion for summary judgment that OSA breached its contract with Adams is granted for purposes of liability. Whether summary judgment is granted against OSA on damages or on other claims, or against other defendants, depends on whether this court grants or denies the pending motion to withdraw the deemed admissions.

### C.   Adams's Motion for Sanctions

Adams moved for default judgment as a sanction for discovery abuse against Con-Dive, OSA, Yanez, and Oceanografia. (Docket Entry No. 51). The record is clear that the defendants and their counsel have repeatedly ignored this court's discovery orders. The defendants disregarded the deadline for submitting their discovery responses, a deadline that this court had extended to accommodate their earlier failure to respond to these requests.[19] Without seeking leave of court to withdraw their deemed admissions and to submit amended discovery responses, they attempted to submit untimely responses. The responses of Yanez, which disclaim knowledge of any business dealings about the company in which he serves as chief executive officer, are, at best, evasive.

---

[19]   As noted, many of the requests for admission Adams filed were objectionable, *see, e.g.*, 8B FEDERAL PRACTICE & PROCEDURE § 2255, but the defendants did not object as Rule 36 requires.

Rufty's suggestions that Yanez was "properly being precise . . . and reasonably attempted in good faith to maintain a distinction between their individual identities . . . and as company representative" appear disingenuous, at least.  (Docket Entry No. 62, at 5).

Nevertheless, this court is not ready to impose the extreme death-penalty sanction that Adams seeks.  Under Rule 37, a district court may impose sanctions on a party who fails to comply with a discovery order.  Rule 37 "contains two standards—one general and one specific—that limit a district court's discretion."  *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982).  First, any sanction must be "just."  *Id.*  Second, the sanction "must be specifically related related to the particular 'claim' which was at issue in the order to provide discovery."  *Id.*  The sanction of a default judgment is warranted when the penalized party's discovery violation is willful and when a lesser sanction would not substantially achieve the desired deterrent effect.  *United States v. $49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003) (citing *Smith v. Smith*, 145 F.3d 335, 344 (5th Cir. 1998); *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 514 (5th Cir. 1985); and *Jones v. La. State Bar Ass'n*, 602 F.2d 94, 96 (5th Cir. 1979) (per curiam)).  The court "may also consider whether the discovery violation prejudiced the opposing party's preparation for trial, and whether the client was blameless in the violation."  *$49,000 Currency*, 330 F.3d at 376 (citing *Batson*, 765 F.2d at 514). On the present record, it is unclear what sanction is appropriate, although it is clear that some sanction will be imposed.  The motion for sanctions is denied, but without prejudice.  Adams may reassert the motion for sanctions after the motion to withdraw admissions and, depending on the outcome of that motion, a motion for summary judgment are decided.  At that point, the full extent of the parties' litigation conduct and its effects can be examined.

**IV.    Conclusion**

28

The pending motions are decided as follows:

- Adams's motion for default judgment, (Docket Entry No. 50), is denied as moot.  (*See supra* § II.B).

- Woodlands's motion to dismiss, (Docket Entry No. 53), is granted as to the conspiracy claim, (*see supra* § II.B.1); granted as to the theory of sham to perpetrate a fraud; and denied as to the alter-ego theory, (*see supra* § II.B.2.a).  Leave to amend is denied.

- Woodlands's motion to reopen and extend discovery deadlines, (Docket Entry No. 68), is denied, without prejudice.  (*See supra* § II.B.2.a).  Woodlands may reassert this motion if the motion to withdraw admissions, (Docket Entry No. 81), is granted.

- Kay's motion to dismiss, (Docket Entry No. 55), is granted as to the conspiracy claim, (*see supra* § II.B.1); granted as to the theory of sham to perpetrate a fraud; and granted as to the alter-ego theory, (*see supra* § II.B.2.b).  Leave to amend is granted only as to the alter-ego theory.

- Azcarate's motion to dismiss, (Docket Entry No. 56), is granted as to the conspiracy claim, (*see supra* § II.B.1); granted as to the theory of sham to perpetrate a fraud; and granted as to the alter-ego theory, (*see supra* § II.B.2.b).  Leave to amend is granted only as to the alter-ego theory.

- Adams's motions to strike the untimely discovery responses, (Docket Entry Nos. 51, 54), is granted.  (*See supra* § III.A).

- The summary-judgment defendants' motion for leave to file excess pages in its summary-judgment response, (Docket Entry No. 64), is granted.  (*See supra* § III.B).

- The summary-judgment defendants' motion for extra time to file its summary-judgment response, (Docket Entry No. 65), is granted.

- The summary-judgment defendants' motion to substitute exhibits, (Docket Entry No. 71), is granted.  (*See supra* § III.B).

- Adams's motion for summary judgment, (Docket Entry No. 51), is granted as to liability on the breach of contract claim against OSA, and otherwise denied, without prejudice. (*See supra* § III.B).  Adams may reurge its motion for summary judgment if the motion to withdraw admissions, (Docket Entry No. 81), is granted.

- Adams's motion for sanctions, (Docket Entry No. 51), is denied at this time, without prejudice to Adams reurging it after the motion to withdraw admissions and, depending on the outcome, a motion for summary judgment, are determined.  (*See supra* § III.C).

- The summary-judgment defendants' motion for leave to file excess pages in their motion to withdraw admissions, (Docket Entry No. 83), is granted.  Their motion to withdraw their deemed admissions, (Docket Entry No. 81), will be ruled upon once ripe.

A status conference and hearing are set for **October 25, 2011, at 8:30 a.m.**, in Courtroom

11-B.

   SIGNED on September 30, 2011, at Houston, Texas.

         Lee H. Rosenthal
        United States District Judge